USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/25/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| D.S., individually, and on behalf of H.S., a child with a disability,<br><br>Plaintiffs,<br><br>-against-<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION,<br><br>Defendant. | 1:25-cv-3022-MKV<br><br><u>OPINION & ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, & REMANDING TO THE STATE REVIEW OFFICER</u> |

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs initiated this action with the filing of a complaint under Title 20, United States Code, Section 1415, *et seq.* (the "Individuals with Disabilities Education Improvement Act" or "IDEA"). [ECF No. 1] (the "Complaint" or "Compl."). The Parties provided the certified administrative record that underlies their dispute. [ECF Nos. 14-1–4].[1]

Thereafter, Plaintiffs filed a motion for summary judgment, [ECF No. 17], accompanied by a memorandum of law in support, [ECF No. 17-1] ("P. MSJ"), and a joint statement of undisputed facts, [ECF No. 17-2] (the "Joint 56.1"). Defendant filed a cross-motion for summary judgment, [ECF No. 20], accompanied by a memorandum of law in support and in opposition to Plaintiffs' motion, [ECF No. 21] ("D. MSJ"). Plaintiffs filed a memorandum in further support of their motion and in opposition to Defendant's. [ECF No. 22] ("P. Reply"). Defendants did the same. [ECF No. 23] ("D. Reply"). The Court having denied Plaintiffs' request for a sur-reply, [ECF No. 25], the cross-motions for summary judgment are fully briefed.

[1] The Court previously granted leave to file the certified administrative record under seal, "subject to further review." [ECF No. 13]. The Court is not asked to revisit that ruling here.

In short, Plaintiff D.S. (the "Parent"), the parent of H.S. (the "Student"), a disabled child, seeks review of state-level administrative proceedings that found that, while the Student has been denied a statutorily appropriate education, no relief is available.

**LEGAL STANDARD**

"The IDEA was designed, *inter alia*, to protect the rights of children with disabilities as well as the rights of their parents and 'to ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living.'" *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126, 133 (2d Cir. 2019) quoting 20 U.S.C. § 1400(d)(1)(A)). "The centerpiece of the IDEA and its principal mechanism for achieving this goal is the" individualized education program ("IEP"). *T.K. v. New York City Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016) (citation modified)). "The IEP is a written statement that sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (citation modified).

"Where . . . a parent believes that the program developed for his or her child for the upcoming school year would deprive the child of a FAPE, the parent may file a due process complaint with the DOE seeking review of 'any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a FAPE to such child.'" *A.M. v. New York City Dep't of Educ.*, 845 F.3d 523, 528 (2d Cir. 2017) (citation modified, quoting 20 U.S.C. § 1415(b)(6)(A)). "Parents who believe that a FAPE is not being provided to their child may unilaterally enroll the child in a private school and seek tuition reimbursement from the school district" by the same mechanism. *M.O. v. New York City Dep't of Educ.*, 793 F.3d 236, 239 (2d

Cir. 2015) (citation modified). "Filing the [due process] complaint triggers an administrative procedure by which the board of education appoints an Independent Hearing Officer ('IHO') who conducts a formal hearing and fact-finding," the result of which "may be appealed to a State Review Officer ('SRO')" whose determinations may, in turn, "be challenged by filing a civil action in state or federal court." *Id.* On review, the district court is "direct[ed] . . . to 'grant such relief as it determines is appropriate.'" *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985) (citation modified, quoting 20 U.S.C. § 1415(e)(2) (1984) (now 20 U.S.C. § 1415(i)(2)(C)(iii))); *see also Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 369 (2d Cir. 2006).

"In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but the procedure is in substance an appeal from an administrative determination, not a summary judgment motion." *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (citation modified). The "reviewing court must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence." *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012) (citation modified); *see also* 20 U.S.C. § 1415(i)(2)(C)(iii).

Nevertheless, this framework "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982); *see also Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007) ("The role of the federal courts in reviewing state educational decisions under the IDEA is 'circumscribed.'" (citation modified, quoting *Muller ex. rel Muller v. Comm. on Special Educ. of E. Islip Union Free Sch. Dist.*, 145 F.3d 95, 101 (2d Cir. 1998)). Instead, courts "must give due weight to the state administrative proceedings, mindful that the judiciary generally lacks the

specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *C.S.*, 990 F.3d at 165 (citation modified).

"The level of deference granted to the administrative decision, however, is not without limitation." *L.O. v. New York City Dep't of Educ.*, 822 F.3d 95, 109 (2d Cir. 2016). "The deference owed depends on both the quality of the opinion and the court's institutional competence." *C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014); *see also R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012) (The "deference owed to an SRO's decision depends on the quality of that opinion.").

Finally, whatever deference a reviewing court ordinarily "must give to the state administrative proceedings is not implicated with respect to issues of law." *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005) (citation modified). In deciding such issues, "courts owe no deference to state hearing officers." *C.S.*, 990 F.3d at 165.[2]

**BACKGROUND**

The material facts of this case are undisputed. *See* Joint 56.1. The Student is a child on the autism spectrum, who has been classified as disabled under the IDEA. *Id.* ¶¶ 1, 3. The Department of Education ("DOE") developed an IEP for the Student at the outset of calendar-year 2024 (the "2024–25 IEP"). *Id.* ¶ 4–5. The IEP provided for placement in a New York State Education Department ("NYSED")-approved private school. *Id.* ¶ 6. No such school was identified for implementation of the IEP. *Id.* ¶ 7.

[2] Accordingly, "putting aside the question of whether *Loper Bright* [*Enterprises v. Raimondo*, 603 U.S. 369 (2024)] applies to a state agency's informal adjudication, . . . the Court does not divine any lesson from *Loper Bright* prohibiting" deference to state administrative officers "on broader fact-based questions of 'educational policy.'" *Khanimova v. Aviles-Ramos*, No. 24-cv-4304 (JPO), 2025 WL 1266891, at *4 (S.D.N.Y. Apr. 30, 2025) (citation modified, quoting *Ferreira v. Aviles-Ramos*, 120 F.4th 323, 332 (2d Cir. 2024)), *aff'd sub nom. Khanimova v. Samuels*, No. 25-1396, 2026 WL 1730666 (2d Cir. June 15, 2026).

The Parent filed a due process complaint seeking prospective tuition funding to Gersh Academy for a placement covering the 2024–25 school year, thus initiating an administrative hearing before an IHO (the "IHO Hearing"). *Id.* ¶ 8. The IHO Hearing commenced in August 2024. *Id.* ¶ 9. Evidence submitted in the IHO Hearing indicated that Gersh Academy had offered the Student a seat contingent upon funding—whether promised via a contract or ordered by the IHO. *Id.* ¶ 10–11. The Parents did not sign a contract with Gersh. *Id.* ¶ 12.

The IHO concluded that DOE's failure to provide a NYSED-approved private-school placement constituted a FAPE denial. *Id.* ¶¶ 14–15. Nevertheless, the IHO found that the Parent lacked standing to pursue prospective tuition funding for a private school placement, so the Student could not get relief. *Id.* ¶ 15–16.

The Parent appealed, and DOE cross-appealed, to the SRO. *Id.* ¶¶ 17, 19. DOE did not challenge the determination that DOE denied the Student a FAPE. *Id.* ¶ 21. The SRO nevertheless upheld the IHO's determination that, because the Parents lacked standing to seek prospective tuition funding, the Student could not get relief. *Id.* ¶ 22.

**ANALYSIS**

The Court has carefully reviewed the decisions issued below by the administrative hearing officers. *See* [ECF No. 14-1] at R-8–22 (the "SRO Decision"); [ECF No. 14-1] at R-23–39 (the "IHO Decision").[3] The Parties present the Court with three potentially dispositive and closely related issues for review.

The first and most fundamental issue is whether the IHO and SRO erred in declining to grant any relief after finding that DOE denied the Student a FAPE. *See* P. MSJ at 6–15; D. MSJ at 9–14; P. Reply at 1–4; D. Reply at 2–4. This issue is principally focused on Plaintiffs' standing,

[3] Hereinafter, the Court refers to the native pagination of the SRO and IHO Decisions.

or lack thereof, to pursue prospective tuition funding for a private-school placement. *See* P. MSJ at 6–13; D. MSJ at 9–14; P. Reply at 1–3; D. Reply at 2–4. But it also concerns the possible alternative of compensatory relief. *See* P. MSJ at 13–15; D. MSJ at 13–14; P. Reply at 3–4. The second issue is whether the IHO and SRO erred in denying home-based applied behavioral analysis ("ABA").[4] *See* P. MSJ at 15–18; D. MSJ at 14–15; P. Reply at 4–5. The question of standing is again at least obliquely presented here. *See* D. MSJ at 15; P. Reply at 4–5. The third issue is whether this action is moot. *See* D. MSJ at 15–16; P. Reply at 5–7; D. Reply at 5–6. This issue, too, is closely related to standing. *See* D. MSJ at 16; P. Reply at 6–7; D. Reply at 5.

The Court begins by observing that, "in enacting the IDEA, Congress did not intend to create a right without a remedy." *Streck v. Bd. of Educ. of the E. Greenbush Cent. Sch. Dist.*, 408 F. App'x 411, 415 (2d Cir. 2010) (citation modified). Because it is undisputed here that the Student's right to a FAPE was withheld, *see* Joint 56.1 ¶¶ 14–15, 21, this axiomatic observation counsels remand to the state administrative officers. *See L.K. v. New York City Dep't of Educ.*, 674 F. App'x 100, 102 (2d Cir. 2017) (summary order) ("On remand, the district court is welcome to consider the merits of the question, or, perhaps more profitably, to remand the matter to state administrative officers for a complete reexamination in light of this decision and any further information that might now be available about [the Student] and his needs given the passage of time since the initial due process complaint was filed." (citation modified)).

Nevertheless, this case has made it this far because it does present something of a remedial puzzle. "An award of damages is not available [under the IDEA], but a court may award various forms of retroactive and prospective equitable relief, including reimbursement of tuition, compensatory education, and other declaratory and injunctive remedies." *Doe v. E. Lyme Bd. of*

[4] The Court does not address the IHO's determination, subsequently rejected by the SRO, that Plaintiff's claim for home-based ABA was barred by *res judicata*. *See* D. MSJ at 2.

*Educ.*, 790 F.3d 440, 454 (2d Cir. 2015) (citation modified). The Parties' briefing focuses almost entirely on forms of relief that are more or less prospective in orientation, with the primary focus on Plaintiffs' request for an order directing DOE to "prospectively fund the cost of [the Student's] tuition at Gersh Academy." Compl. at 9.

"If the administrative and judicial review under the [IDEA] could be completed in a matter of weeks, rather than years, it would be difficult to imagine a case in which . . . prospective injunctive relief" "directing the school officials to develop and implement at public expense an IEP placing the child in a private school" "would not be sufficient." *Burlington*, 471 U.S. at 370. But, because "the review process is ponderous," it is in ordinary circumstances impracticable for a court to award such prospective relief before the school year in question concludes. *Id.* In other words, the court attempting to fashion a prospective remedial intervention does so with its sights fixed on a target that is not only moving, but moving quickly.

Solving for that issue, the Supreme Court held in *Burlington* that parents may take matters into their own hands when they are convinced that their child is being denied a FAPE, unilaterally placing their child in a private school and seeking reimbursement later. *See id.* This, however, is cold comfort for parents who are not willing or able to assume the "financial risk," *id.* at 374, of enrollment prior to review.

The Parents here are in precisely such a situation. *See* Joint 56.1 ¶ 12. They are not so "wealthy . . . as to be able to front the cost of services," nor are they willing to take the "risk[] of signing [a] contract[] for money they can never hope to repay." P. Reply at 4. Defendant argues—and the administrative hearing officers found—that this predicament precludes relief in the form of tuition funding. D. MSJ at 10; SRO Decision at 13; IHO Decision at 15–16. Indeed, Defendant goes further, suggesting that the Parent's decision not to unilaterally enroll the Student in private school makes relief of any sort impossible. D. MSJ at 13–14, 15.

Defendant also makes this argument in terms of mootness. Because the Parents seek relief that "pertain[s] to the enrollment of the Student in Gersh during the 2024–25 school year and the provision of ABA therapy during the same year," and because the Parents did not unilaterally assume financial obligations for that year, "the claims are no longer live, and this matter should be dismissed as moot." D. MSJ at 16.

Whether it framed in terms of standing, D. MSJ at 10, 13–14, 15, or in terms of mootness, D. MSJ at 15–16, the Court disagrees with Defendant's position that, because they have not incurred a financial liability through unilateral enrollment, Plaintiffs are ineligible for relief. That position is based upon an untenable and unnaturally cramped reading of the IDEA, applicable caselaw, the administrative record, and the law of equitable remediation generally. It would render unreviewable vast swaths of an area Congress clearly intended to be reviewed. *See Burlington*, 471 U.S. at 369 ("The Act also provides for judicial review in state or federal court to 'any party aggrieved by the findings and decision' made after the due process hearing." (citation modified, quoting 20 U.S.C. § 1415(e)(2) (1984) (now 20 U.S.C. § 1415(i)(2)(C)(iii))). Moreover, it would do so in a way that turns entirely on "a family's financial situation." *Connors v. Mills*, 34 F. Supp. 2d 795, 804 (N.D.N.Y. 1998) ("It simply cannot be the case that an act designed to grant 'all' disabled children access to needed services would undermine that very goal by making such access dependent upon a family's financial situation.").

In the Court's view, whether, "as a result of [DOE's] . . . failure to provide a FAPE," a plaintiff "incur[s] a financial obligation . . . under the terms of [an] enrollment contract" for a unilateral placement, *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 456 (2d Cir. 2014), or instead acquiesces to a statutorily deficient education pending litigation, the "denial of a FAPE" itself "constitutes an injury sufficient to satisfy the standing requirement." *S.W. v. New York City Dep't of Educ.*, 646 F. Supp. 2d 346, 358–59 (S.D.N.Y. 2009) (Despite "the fact that the enrollment

contract relieved [plaintiff] of financial responsibility" for what was "undisputed[ly] . . . an appropriate education," she suffered an "injury in fact based upon a violation of her right to have her son provided with a FAPE at public expense."); *but see See E.M.*, 758 F.3d at 456 ("We need not decide today the thorny question whether the denial of a ***publicly*** funded FAPE, standing alone, is an injury that is 'redressable' by an order requiring [DOE] to pay the child's private-school tuition directly." (citation modified)). And, obviously, the claims of a student who is left to languish without a FAPE do not become "moot" simply because the school year ends. *Cf. Yandow v. Kronau*, 474 F. App'x 797, 799 (2d Cir. 2012) (summary order) ("A suit seeking injunctive relief becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." (quotation omitted)).

This, however, does not resolve the question of what remedy is appropriate. "Courts have long held that, when a state-level administrative authority determines that a proposed IEP is inadequate and the disabled child lacks the financial means to meet the cost of private-school tuition pending a final decision on the merits, courts may order the public school district to pay, prospectively, the cost of private-school tuition as the administrative and judicial process unfolds." *E.M.*, 758 F.3d at 453 n.14 (citation modified, citing *Susquenita Sch. Dist. v. Raelee S. ex rel. Heidi S.*, 96 F.3d 78, 85–87 (3d Cir. 1996); *Connors v. Mills*, 34 F. Supp. 2d 795, 802–06 (N.D.N.Y. 1998)). That it is logically impossible to provide "prospective" tuition funding for a school year in the past accounts for the superficial cogence of Defendant's justiciability arguments. *See S.W.*, 646 F. Supp. 2d at 359 ("For a plaintiff to have standing, . . . the relief sought by the plaintiff must be likely to redress the plaintiff's alleged injury." (citing *Jenkins v. United States*, 386 F.3d 415, 418–19 (2d Cir. 2004)); D. MSJ at 16 ("Even resolving questions of standing in the Parents' favor, the Court would still not be able to order the relief that they sought."). But prospective tuition

funding for the 2024–25 school year is not the only relief available. Instead, the "broad discretion" conferred upon the Court to craft IDEA remedies encompasses "various forms of retroactive and prospective equitable relief, including reimbursement of tuition, compensatory education, and other declaratory and injunctive remedies." *E. Lyme*, 790 F.3d at 454 (citations omitted).

It is the Court's view that some form of compensatory relief should be awarded here. "The IDEA allows an IHO or SRO to fashion an appropriate remedy for students not provided a FAPE, and the Second Circuit has held that compensatory education is an available remedy under the IDEA to make up for" such a denial. *M.M. v. New York City Dep't of Educ.*, No. 15-cv-05846 (PKC), 2017 WL 1194685, at *2 (S.D.N.Y. Mar. 30, 2017). This form of relief "must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *E. Lyme*, 790 F.3d at 457 (quoting *Reid*, 401 F.3d at 524). As a forward-looking remedy for a past FAPE denial, compensatory education is aptly applied to a situation like the Student's here.

Indeed, the SRO recognized that in cases "similar to the one in this matter," where the Parents "have not expended any money on tuition" for a would-be unilateral private-school placement, "their request . . . for prospective placement" "can reasonably be understood only . . . under express or at least implicit treatment as compensatory education." SRO Decision at 8 (citation modified, quoting *Smith v. Cheyenne Mountain Sch. Dist. 12*, No. 17-cv-00022 (CMA) (KMT) 2018 WL 3744134, at *8 (D. Colo. Aug. 7, 2018)). Against this backdrop, the Court cannot credit the SRO's apparent determination that, while "there was a general request for compensatory education in the due process request notice," any such request was effectively waived. SRO Decision at 14 n.8. And at this stage, "the fact that Defendant [has] conceded that there was a . . . denial of a FAPE satisfies the Plaintiffs' burden of proving entitlement to a properly crafted

compensatory award." *M.T. v. Arlington Cent. Sch. Dist.*, No. 22-cv-00437 (PMH), 2022 WL 16857176, at *8 (S.D.N.Y. Nov. 10, 2022) (citation modified).

The SRO understandably identified issues associated with the temporal disjunction of judicial review in cases like this one. *See* SRO Decision at 6–7 ("An award of prospective relief in the form of prospective placement of a student . . . under certain circumstances[] has the effect of circumventing the statutory process[] pursuant to which the CSE is tasked with reviewing information about the student's progress under current educational programming and periodically assessing the student's needs."); 8–9 (discussing cases presenting variations on this problem). Indeed, in the SRO's view, those concerns have only been exacerbated, since "the school year at issue here . . . [was] not yet over" at the time of the SRO Hearing, SRO Decision at 9, and "concerns about circumventing the CSE process arise most prominently in matters where the school year challenged has ended and, in accordance with its obligation to review a student's IEP at least annually, the CSE would have already convened to produce an IEP for the following school year," SRO Decision at 7. The Court is sensitive to the risk that an Article III judge in such a situation might impose upon the parties a relatively drastic remedial regime untethered from the administrative process and the student's actual progress. *See Rowley*, 458 U.S. at 206 (The availability of judicial review "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.").

Here, however, the Court has received no indication that the development or implementation of an IEP for the 2025–26 or 2026–27 school years has remediated or is likely to remediate the Student's injury. *See Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 526 (D.C. Cir. 2005) ("In light of the absence of pertinent findings in the administrative record and given that both parties previously filed cross-motions for summary judgment rather than exercising their right to 'request' consideration of additional evidence, the district court may determine that the

'appropriate' relief is a remand to the hearing officer for further proceedings." (citation modified)). More fundamentally, the risk of "circumventing the statutory process," SRO Decision at 7, is one that is taken to account in providing for judicial review in the first place. *See Rowley*, 458 U.S. at 206. It cannot be the case that this risk becomes intolerable every time the school year in question ends and the IEP cycle renews. *Id.* at 186 n.9 ("Judicial review invariably takes more than nine months to complete, not to mention the time consumed during the preceding state administrative hearings. The District Court thus correctly ruled that it retained jurisdiction to grant relief because the alleged deficiencies in the IEP were capable of repetition as to the parties before it yet evading review" even though the "school year had ended and . . . the school administrators [had not yet been] able to develop another IEP for subsequent years.").

Indeed, some degree of circumvention is precisely the point of judicial review where the statutory process has otherwise failed. *Cf. Streck*, 408 F. App'x at 415. That a student's family cannot afford to undertake that circumvention themselves—by unilaterally placing their child in private school while awaiting administrative or judicial resolution—does not mean they are ineligible for relief. *Cf. Burlington*, 471 U.S. at 370.

Defendant argues that "the first step toward achieving relief under *Burlington/Carter* is for a parent to actively remove their student from the public education setting and place them into a private school at their own financial risk." D. MSJ at 10 (citation modified). That argument, which was one basis of the SRO Decision, *see* SRO Decision at 12–13, misunderstands both the *Burlington-Carter* framework and the posture of this case. The *Burlington-Carter* framework, based upon *Burlington*, 471 U.S. 359, and *Florence County School District Four v. Carter*, 510 U.S. 7 (1993), provides that "parents who," "dissatisfied with their child's education," "unilaterally change their child's placement during the pendency of review proceedings" can subsequently be reimbursed if "(1) the school district's proposed placement . . . den[ied] a FAPE to the student";

"(2) the parents' alternative private placement was appropriate; and (3) equitable considerations favor reimbursement." *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 526–27 (2d Cir. 2020) (citation modified).

*Burlington-Carter* relief, in other words, is an ***expansion*** of the universe of available remedies, intended to avoid the "empty victory" of a years-late pronouncement from a court that the parents were right to take matters into their own hands but that, nevertheless, their "expenditures could not in a proper case be reimbursed by the school officials." *Burlington*, 471 U.S. at 370. "Financial risk" is not some kind of threshold element in such cases; it is, rather, a description of the reality faced by parents who opt for unilateral placement. *Id.* It does not make any sense, and certainly is not equitable, to contend that families unable to assume such risk, though they have concededly been denied a FAPE, are categorically ineligible for relief.

The Court is likewise unable to defer to the SRO's determination that, because "the appropriateness of a unilateral placement" under *Burlington-Carter* cannot be evaluated "where the student has not actually attended the placement or received any instruction in the private school," relief is unavailable. SRO Decision at 12. Again, such a requirement is Kafkaesque—a tautological transformation of *Burlington-Carter* from a passageway into a barrier. *Cf. Carter*, 510 U.S. at 15 ("Public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice. This is IDEA's mandate, and school officials who conform to it need not worry about reimbursement claims." (citation modified)). Indeed, the SRO acknowledges elsewhere that "the hearing record indicates that Gersh arguably would have passed muster under the prevailing authority governing the appropriateness of unilateral placements if the student actually had been placed there by the parent." SRO Decision at 9–10. This analysis should have been undertaken

in full in the first instance, rather than cut short by Plaintiffs' unwillingness or inability to assume the financial risk of a unilateral placement.

Relatedly, Court does not understand whence the SRO derived the requirement "that the district and the parent both agree that the district unequivocally cannot find an approved placement for the student" before a placement in an unapproved private school may be ordered. SRO Decision at 11 (citing *Connors*, 34 F. Supp. 2d 795). That, here, Defendant merely failed to find an approved placement—rather than actively "agree[ing]" that none "would be appropriate"—does not meaningfully differentiate this situation from the one in *Connors*: It remains the case that, "under Defendant['s] reading of the IDEA, . . . a destitute child would be left in an inappropriate program because the parents would not be able to front the tuition of [non-approved] private placement." *Id.* at 804 (citation modified).

"Indeed, the . . . emphasis on state standards is somewhat ironic," since "it hardly seems consistent with the [IDEA's] goals to forbid parents from educating their child at a school that provides an appropriate education simply because that school lacks the stamp of approval of the same public school system that failed to meet the child's needs in the first place." *Carter*, 510 U.S. at 14 (citation modified). It is undisputed that DOE denied the Student a FAPE by failing to implement the IEP's call for an approved private-school placement.[5] Joint 56.1 ¶¶ 14–15. As the

[5] The Court does not understand the SRO to have held, or Defendant now to argue, that the provision of a so-called "*Nickerson* letter," which allows parents to enroll their children in an approved private school at public expense under certain circumstances, precludes placement in a non-approved private school here. *See* SRO Decision at 11–12 n.6; D. MSJ at 4. Indeed, the IHO specifically determined that "DOE's issuance of a *Nickerson* Letter to the Parents after it could not locate a NYSED NPS placement for the Student does not relieve it of its obligation to offer the Student a school placement for the 2024-2025 school year." IHO Decision at 12 (citing *A.T. and I.T. ex rel. Z.T. v. New York State Educ. Dept.*, No. 98-cv-4166 (JG), 1998 WL 765371, at *1 n.2, *4 (S.D.N.Y. 1998). Relatedly, the Court does recognize that "*Carter* does not stand for the proposition that a school district can be mandated to identify and place a student in a non-approved, private school," but rather that "reimbursement" is an available "remedy in the event that the student is denied a FAPE and the parent unilaterally chooses a placement for a student." *Z.H. v. New York City Dep't of Educ.*, 107 F. Supp. 3d 369, 376 (S.D.N.Y. 2015). The SRO did not address, however, Plaintiffs' argument that Plaintiffs have never asked DOE to identify and place the Student in a private school, but instead only to fund a placement identified and facilitated by Plaintiffs themselves. *See* [ECF No. 14-1] at R-50.

SRO recognized, "it is understandable that the parents are frustrated with the district's failure to locate an appropriate approved nonpublic school." SRO Decision at 13 n.7 (citation modified). That failure should have resulted in a more thorough-going effort to develop an appropriate remedy.

Finally, for all the reasons already discussed, Defendant is wrong to suggest that "home-based ABA for the 2024-25 school year constitutes a form of unilateral placement, a claim for which Plaintiffs have not presented any standing." D. MSJ at 15. Nor can the Court accept Defendants' argument—or the SRO's determination—that an award of home-based ABA is precluded because "school districts are not required . . . to design educational programs to address a student's difficulties in generalizing skills to other settings outside of the school environment, particularly where it is determined that the student is otherwise likely to make progress, at least in the classroom setting." D. MSJ at 14–15 (quoting SRO Decision at 14). While this standard is accurately stated, *see, e.g.*, *L.K. v. New York City Dep't of Educ.*, No. 14-cv-7971 (AJN), 2016 WL 899321, at *8 (S.D.N.Y. Mar. 1, 2016), *aff'd in part, remanded in part*, 674 F. App'x 100 (2d Cir. 2017), it is inapplicable here.

The SRO appears to have misread the record in "find[ing] that the recommendations for home-based ABA services are for the purpose of generalization." SRO Decision at 14 (citing [ECF No. 14-2] at R-297; *id.* at R-325–26). Those reports recommend the provision, "besides 30 hours of ABA in a school setting," of an "additional 10 hours per week" at home, to "allow for target skills to be taught (and generalized)." [ECF No. 14-2] at R-297; *id.* at R-325–26. Moreover, the SRO elided important detail in determining that a third report, which concededly "did not explicitly state that the home-based ABA services should be for the purpose of generalization of skills" at all, still "stated that its findings were 'consistent' with" the prior two. SRO Decision at 14 (citing [ECF No. 14-2] at R-345–46)). Indeed, that report specifically recommended that, "***until***

***an appropriate educational program can be sourced***, [the Student] should receive full time one-to-one ABA pushed into his school/classroom setting in addition to ABA in the home." ECF No. 14-2] at R-345 (citation modified, emphasis added).

As Plaintiffs point out, "it is unclear . . . how the home-based ABA could be beyond what the district is required to deliver to enable the student to make progress when there has already been a determination that the services the student was receiving throughout the entire school year had denied him the ability to make progress." P. MSJ at 16 (citation modified); *cf. R. F. by H.F. v. New York City Dep't of Educ.*, No. 1:24-cv-03117 (MKV), 2025 WL 2695690, at *8 (S.D.N.Y. Sept. 22, 2025) (recognizing that there is no "blanket rule prohibiting funding for after-school services or instruction that generalize[] skills," though "the IDEA does not require after-school services aimed at generalization particularly where it is determined that the student is otherwise likely to make progress." (citation modified)).

**CONCLUSION**

"The SRO's inquiry should not have ended" where it did, and "the SRO's determination that no remedy is warranted for the denial of a FAPE . . . is . . . reversed." *M.T.*, 2022 WL 16857176, at *8–9 (citation modified). To avoid "substitut[ion]" of this Court's relatively less informed "notions of sound educational policy for those of the school authorities which [it] review[s]," *Rowley*, 458 U.S. at 206, this matter is "remand[ed] . . . to [the] state administrative officers for a complete reexamination in light of this decision and any further information that might now be available about [the Student] and his needs given the passage of time since the initial due process complaint was filed." *L.K.*, 674 F. App'x 100, 102 (citation modified). In particular, "the IHO [should] supplement the record and determine an appropriate compensatory award, if applicable." *M.T.*, 2022 WL 16857176, at *9.

**SO ORDERED.**

**Date: September 25, 2026**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**